UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

IN RE

HRNC DISSOLUTION CO.                                        CASE NO. 02-14261

DEBTOR

TERRY GIESE                                                       PLAINTIFF

V.                                                         ADV. NO. 15-1005

COMMUNITY TRUST BANK, *et al.*                             DEFENDANTS

### MEMORANDUM OPINION AND ORDER

      This removed action seeks an adjudication of title to funds that this Court has already adjudicated at least once, if not twice.  Debtor Leslie Resources, Inc. sold its assets to two entities in asset purchase agreements approved by this Court pursuant to the Debtor's confirmed plan.  The two agreements generally sold different assets, but they contained seemingly overlapping provisions for the sale of Debtor's cash.  After these sales, a bank at which the Debtor had an account filed an adversary proceeding in the Debtor's bankruptcy case requesting a determination of the rightful owner of the account funds.  The Court entered a judgment in that adversary proceeding dividing the funds between the Debtor's two purchasers.

      Eight years after the entry of that judgment, Plaintiff filed an action in state court claiming that he had title to the account funds, and that the purchasers and bank committed various state-law torts in causing this Court to incorrectly decide otherwise.  Defendants removed the action to the District Court, claiming bankruptcy jurisdiction.  The District Court denied Plaintiff's motion to remand, holding that bankruptcy jurisdiction existed because the action was at least related to Debtor's bankruptcy case.  Now, Plaintiff seeks mandatory

abstention, arguing that while this action may relate to Debtor's case, it did not arise in Debtor's case and is non-core. The Court disagrees. Few actions could arise in a bankruptcy case more clearly than this one, which not only facially attacks a judgment entered in a bankruptcy case, but claims that that judgment was obtained by tortious acts and seeks damages resulting from its entry. Plaintiff's request for mandatory abstention will be denied.

## Facts and Procedural History[1]

A.  The Debtor's Bankruptcy.

Debtor Leslie Resources, Inc. filed a voluntary petition under chapter 11 in November 2002. Its case was jointly administered with that of numerous affiliates in a case styled *In re Horizon Natural Resources Company*, Case No. 02-14261. In its schedule of personal property, the Debtor listed $316,358.00 in "restricted cash." [LRI ECF No. 7 at 20.] The Debtor did not indicate at what bank this account was deposited, nor the nature of the restriction.

In 2004, the Debtor's assets, along with the assets of many of its affiliates, were sold at auction. Two asset purchase agreements to which the Debtor was a party emerged from that auction, one with International Coal Group, Inc. ("ICG") and one with Lexington Coal Company, LLC ("Lexington Coal"). In September 2004, this Court entered an order approving both agreements, and confirmed Debtor's plan of liquidation, which provided for the sale of Debtor's assets pursuant to the two asset purchase agreements.

While the two purchasers each bought different assets, both agreements contained similar language regarding the sale of Debtor's cash. *See* HNRC ECF No. 3172 ¶ 2.1(a)(xii) (providing, absent certain exclusions, for the sale of "all cash and cash equivalents of the [Debtor]" to ICG);

---

[1] References to the docket in *In re Horizon Natural Resources Company*, Case No. 02-14261, appear as "HNRC ECF No. __." References to the docket in *In re Leslie Resources, Inc.*, Case No. 02-14314, appear as "LRI ECF No. __." References to the docket in *Community Trust Bank, Inc. v. Berman, et al.*, Adv. Case No. 06-1022, appear as "CTB AP ECF No. __." References to the docket in this adversary proceeding appear as "ECF No. ___."

HNRC ECF No. 3915 ¶ 2.1(a)(v) (providing, absent certain exclusions, for the sale of "all cash and cash equivalents of the [Debtor]" to Lexington Coal). Neither agreement provided a schedule listing the cash assets each purchaser was purchasing. As relevant here, ICG also purchased a leasehold interest from Debtor in Leslie County, Kentucky, listed on the schedules of ICG's asset purchase agreement as "Emmit Begley Heirs Escrow" [HNRC ECF No. 3172-4 at 23], and Debtor's rights in a lease agreement, also listed on the schedules of ICG's asset purchase agreement as "Emmit Begley Heirs Escrow." [HNRC ECF No. 3172-5 at 23.] Neither asset was listed in the schedules to Lexington Coal's asset purchase agreement.

The order approving these sales provided that they "vest[ed] in each Purchaser all right, title and interest in the applicable Purchased Assets . . . free and clear of any Encumbrances." [HNRC ECF No. 4085 at 6-7.] With respect to assumed liabilities, the sale order provided that "none of the Purchasers shall have any liability for any (i) obligation of the Debtors, or (ii) any Claim against the Debtors related to the applicable Purchased Assets," except as expressly provided in the sale agreements.[2] [*Id.* at 7.] The sale order further enjoined all persons from filing actions against the Purchasers "with respect to any (a) Encumbrance . . . [on] the applicable Purchased Assets, or (b) Successor Liability." [*Id.* at 14.] Debtor's confirmed plan contained similar provisions.

B. The "E. Begley Escrow" Account.

In June 2006, two years after the approval of Debtor's sales, Community Trust Bank ("CTB") filed an adversary proceeding in this Court [Adv. Case No. 06-1022] seeking a declaratory judgment as to the ownership of funds the Debtor deposited at CTB. CTB alleged that in 1997, the Debtor opened an account at CTB, listing its owner as "Leslie Resources E.

---

[2] The sale agreements, as relevant here, provided that the purchasers assumed liabilities "arising from or related to the Buyer's [purchase] after the Closing Date," but not "any Liabilities arising out of a breach by the Sellers of any Executory Contract." [HNRC ECF No. 3172 ¶ 2.3(a)(i); HNRC ECF No. 3915 ¶ 2.3(a)(i).]

3

Begley Escrow." Subsequently, the Debtor changed the owner on the account to an address in Ashland, Kentucky and added the account name "Leslie Resources – E Begley Escrow." By the date the adversary proceeding was filed, $334,054.11 was in the account. Due to the Debtor's multiple sale agreements, and the reference to "E Begley" in the account name, CTB was unable to identify the owner of the account. It therefore sought a declaratory judgment and interpleader from this Court, naming as defendants the Debtor, the Debtor's Liquidating Trustee, Lexington Coal, ICG, A.T. Massey Coal Company ("Massey"), a purchaser of some of Debtor's affiliates, and "E. Begley," "an unknown claimant referred to on the Business Account Agreements." [CTB AP ECF No. 4 at 2.]

After filing that adversary proceeding, CTB represented that after diligent search and inquiry, it was unable to determine E. Begley's whereabouts or full name. It therefore sought leave to serve Mr. Begley by publication. This Court granted CTB's request. After the Debtor, the Liquidating Trustee, Massey, and E. Begley failed to file answers to CTB's complaint, this Court entered a default judgment against all four defendants, extinguishing any interest they may have had in the CTB account. Defendants ICG and Lexington Coal, however, both made claims to the account, so CTB moved to pay the account funds into the Court and to be dismissed from the adversary proceeding. CTB's motion was granted, leaving only ICG and Lexington Coal as parties. In December 2006, ICG and Lexington Coal tendered an agreed order dismissing the adversary proceeding and dividing the account funds (ICG–67 %, Lexington Coal–33%). The Court entered that order and disbursed the subject account funds in accord with its terms.

    C. Plaintiff's Action.

        1. <u>Plaintiff's Complaint</u>. Over seven years after this Court disbursed the CTB account funds, Plaintiff filed an action against CTB, ICG, and Lexington Coal in the Leslie

4

County Circuit Court, claiming title to the CTB account funds and seeking damages against those entities on various state-law tort and contract theories.  Plaintiff alleges the following:

In 1936, Emmit Begley, owner of a tract of land in Leslie County, Kentucky, died.  His heirs inherited the property.  At some point in the 1990s, the Debtor entered into mineral leases of the Leslie County tract with six of the Begley heirs (hereafter "the leasing heirs").  Although the Debtor failed to contract with the other part-owners of the tract, Bertha and Arnold Begley (hereafter "the non-leasing heirs"), the Debtor's leases stated that the six leasing heirs were the tract's sole owners.

Plaintiff further alleges that in 1997, the Debtor opened the CTB account as an escrow account to hold mineral royalties in escrow for the leasing heirs.  The Debtor made disbursements in 2000 to the leasing heirs, but not to the non-leasing heirs.  Plaintiff contends that the remaining funds in the account belonged to the non-leasing heirs.  He further alleges that the non-leasing heirs never received notice of (i) the lease agreements, (ii) Debtor's bankruptcy, (iii) Lexington Coal and ICG's purchases of Debtor's assets, or (iv) CTB's adversary proceeding.  In 2009, Plaintiff purchased the non-leasing heirs' interest in the Leslie County tract, vesting him, in his view, with title to the funds formerly held in the CTB account.

Plaintiff seeks judgment, under seven state-law theories, for the amount that CTB paid into this Court in 2006.  His complaint only briefly touches on Debtor's asset sales, but the CTB adversary proceeding is a central focus of most of his claims.  Counts 2 through 5, in particular, seek damages for tortious acts that some or all the Defendants are said to have committed in the CTB adversary proceeding.  Count 2 alleges that ICG and Lexington Coal unlawfully converted the account funds "when they agreed to divide the proceeds of the Escrow Account," i.e., when they tendered a proposed agreed judgment in the CTB adversary proceeding.  [ECF No. 1-2

5

¶ 48.] Count 3 alleges that ICG and Lexington Coal owed a fiduciary duty to the non-leasing heirs, which they breached by failing to give them notice of the CTB adversary proceeding, failing to conduct a diligent search for the Begley heirs, and converting the account funds.  Count 4 alleges that all Defendants, including CTB, were negligent in failing to conduct a diligent search for the Begley heirs in the CTB adversary proceeding, representing to this Court that they had conducted a diligent search, and only serving publication notice on the long-deceased Emmit Begley.  Count 5, similarly, alleges that Defendants made fraudulent and negligent misrepresentations to this Court that they could not determine E. Begley's identity after a diligent search, and that Defendants intended that "the bankruptcy court would rely upon such misrepresentations and omissions."  [*Id.* ¶ 65.]  Count 7, relatedly, claims that ICG and Lexington Coal have been unjustly enriched at the Plaintiff's expense by obtaining the CTB account funds in the CTB adversary proceeding.

The two remaining counts seek to quiet title in the Plaintiff and to obtain damages for the Debtor's breaches of contract.  Count 1, "Collection of Royalties," simply asserts that Plaintiff has title to the account funds, that any rights of ICG and Lexington Coal are subject to his superior rights, and that Plaintiff is therefore entitled to judgment.  Count 6 alleges that Debtor breached a contract with the non-leasing heirs, or that the non-leasing heirs were third-party beneficiaries of Debtor's contracts with the leasing heirs, and that ICG and Lexington Coal are liable for Debtor's breaches.

      2.  <u>The Removal and Subsequent Request for Mandatory Abstention</u>.  Defendants removed the Leslie Circuit Court action to District Court under the bankruptcy removal statute, 28 U.S.C. § 1452, arguing that Plaintiff's suit was related to Debtor's bankruptcy case and therefore was within the District Court's bankruptcy jurisdiction.  Plaintiff moved the District

Court to remand, or, in the alternative, to abstain under § 1334's mandatory abstention provision, which requires abstention in certain related-to non-core matters. 28 U.S.C. § 1334(c)(2). Defendants opposed Plaintiff's motion.

The District Court denied Plaintiff's motion to remand and referred Plaintiff's request for mandatory abstention to this Court. While acknowledging Defendants' substantial arguments that Plaintiff's claims were core, the District Court wrote that, for purposes of deciding the motion to remand, it was only necessary to decide whether Plaintiff's claims were related to the bankruptcy and were therefore within § 1334(b) jurisdiction. The District Court held that the claims could "conceivably . . . impact the handling and administration of the bankrupt estate" and were therefore related to Debtor's case and within the District Court's bankruptcy jurisdiction. *Geise v. Cmty. Tr. Bank*, No. 14-226-GFVT, 2015 WL 1481618, at *6 (E.D. Ky. Mar. 31, 2015).

Upon referral of Plaintiff's action to this Court, Plaintiff renewed his request for mandatory abstention, which Defendants oppose. Plaintiff argues that his action neither arises under title 11 nor arises in Debtor's bankruptcy case; thus, in his view, mandatory abstention applies. Specifically, Plaintiff asserts that his action does not arise under title 11, because state law, not the Bankruptcy Code, creates his causes of action, and that even if Defendants have bankruptcy-law-based defenses, these are insufficient to cause an action to arise under title 11.

Plaintiff argues that his action does not arise in Debtor's bankruptcy case because his causes of action are not unique to the bankruptcy context and could exist outside of bankruptcy. Plaintiff denies that his claims seek an interpretation of, or collaterally attack, any order of this Court, and argues that the Court's prior orders are only relevant to Defendants' potential defenses, which cannot alone bring his claims within this Court's arising-in jurisdiction.

7

Defendants counter that Plaintiff's claims are core on a number of grounds. ICG's objection to Plaintiff's request for abstention, in which Lexington Coal joined, first argues that Plaintiff's action arises under title 11 because this Court has arising-under jurisdiction to enforce its orders and Plaintiff's claims, in its view, are precluded or enjoined by this Court's sale and confirmation orders. ICG next argues that Plaintiff's claims arise under title 11 because they would be determined by provisions of title 11–particularly those provisions that define the bankruptcy estate and regulate bankruptcy sales.

As to arising-in jurisdiction, ICG argues that Plaintiff's claims arise in Debtor's case because none of them would exist but for Debtor's case, and because the conduct of which Plaintiff complains occurred largely within Debtor's case. CTB argues that all of the allegations against it arise in Debtor's case because they concern conduct that occurred in the adversary proceeding CTB filed, and because Plaintiff's claims are in essence a request for relief from the orders entered in that proceeding.

## **Analysis**

Section 1334(c)(2), the source of Plaintiff's request for mandatory abstention, provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Under § 1334(c)(2), a district court or bankruptcy court must abstain from hearing a proceeding if four conditions are met: (1) the claims on which the proceeding is based are state-law claims; (2) the only basis for federal jurisdiction is "related to" jurisdiction under § 1334(b), not arising-under jurisdiction, arising-in jurisdiction or another type of federal jurisdiction; (3) the action was commenced in state court; (4) the state court can timely

8

adjudicate the action.  *See Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 320 (6th Cir. 2006).  The parties only dispute the second condition: whether Plaintiff's claims are core, either because they arise under title 11 or arise in Debtor's case, or whether they are merely related to Debtor's case.  "Whether a proceeding is core is determined on a claim-by-claim basis."  *Waldman v. Stone*, 698 F.3d 910, 921 (6th Cir. 2012).  However, where a party seeks complete abstention in an action, mandatory abstention is inappropriate so long as some claims within an action are core.  *See, e.g.*, *Milford Grp., Inc. v. Ne. Bank of Pa. (In re Milford Grp., Inc.)*, 164 B.R. 892, 897 (Bankr. M.D. Pa. 1993).

      The Sixth Circuit has defined arising-in proceedings as "those that, by their very nature, could arise only in bankruptcy cases."  *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir. 1991); *see also Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 482 (6th Cir. 1992) (defining an arising-in proceeding as "one which could not exist outside of the bankruptcy.").  Beyond this broad definition, the Sixth Circuit has given little guidance on which proceedings "arise in" bankruptcy cases.

      In its most extended treatment of the subject, the Sixth Circuit held that a debtor's ex-wife's defamation action against counsel for her husband's bankruptcy trustee, for remarks counsel made in prosecuting the trustee's contempt motion against the ex-wife, arose in the debtor's bankruptcy case.  *See Lowenbraun*, 453 F.3d at 320-21.  In reaching this conclusion, the Sixth Circuit cited *Sanders*'s definition of arising-in proceedings as those which could not exist outside of bankruptcy.  *Id.* at 320.  Concluding that the ex-wife's claims met that definition, the court observed that "the genesis of [the plaintiff's] state-law action was the bankruptcy proceeding," and that her "claims would not exist but for the bankruptcy proceeding."  *Id.* at 321.

9

ICG, seizing on this language, argues that any claim whose "genesis" is a bankruptcy case arises in that case, and that Debtor's case is the "genesis" of Plaintiff's claims because they would not exist but for Debtor's case. However, *Lowenbraun*'s observation that the claims at issue there would not exist but for the bankruptcy may only be that–a factual observation in support of the court's conclusion that the claims could not exist outside of the bankruptcy context. In any event, this case does not require the Court to decide whether any claim that would not exist but for a bankruptcy arises in bankruptcy, because Plaintiff's claims arise in Debtor's bankruptcy on a much narrower understanding of arising-in jurisdiction.

Plaintiff's claims have many of the hallmarks of claims that satisfy arising-in jurisdiction, as understood by the District Court and courts in many other jurisdictions. Each of Plaintiff's claims rises or falls on a disputed interpretation of ICG and Lexington Coal's asset purchase agreements with the Debtor–that those defendants did not purchase interests in the CTB account. *See* ECF No. 17 at 5 (denying, in support of the motion to abstain, that ICG and Lexington Coal's asset purchase agreements encompassed the CTB account.). The District Court, relying on First and Second Circuit decisions, has twice held that claims on or controlled by postpetition contracts are core proceedings. *See Spradlin v. Pikeville Energy Grp., LLC*, No. 12-11-ART, 2012 WL 6706188, at *11 (E.D. Ky. Dec. 26, 2012) (Thapar, J.) (holding that a claim on a postpetition contract is core (citing *Ben Cooper, Inc. v. Ins. Co. of State of Pa. (In re Ben Cooper, Inc.)*, 896 F.2d 1394 (2d Cir. 1990) and *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165 (1st Cir. 1987) (Breyer, J.))); *Gentry v. Gentry*, 207 B.R. 146, 150 (E.D. Ky. 1997) (Hood, J.) (holding that a claim that "grew out of" a postpetition contract was core (citing *Ben Cooper* and *Arnold Print Works*)).

Because Plaintiff's claims turn on a disputed interpretation of the Debtor's asset purchase agreements, they also turn on a disputed interpretation of Debtor's plan, which provided for Debtor's asset sales. Courts have held that collateral attacks on plans, or disputes over plan interpretation, arise in bankruptcy. *See, e.g., Citizens Bank & Tr. Co. v. Case (In re Case)*, 937 F.2d 1014 (5th Cir. 1991). To succeed, Plaintiff's claims also must grapple with the asset purchase agreements' limited provisions for assumed liabilities, as well as their injunction against claims relating to the purchased assets–yet another factor that courts have held renders state-law claims arising-in matters. *See, e.g.*, *Quesenberry v. Chrysler Grp. LLC*, No. 12-48-ART, 2012 WL 3109431, at *4 (E.D. Ky. July 31, 2012) (holding that a tort action against an entity that purchased a debtor as a going concern was core because its outcome depended on an interpretation of the assumed-liabilities provision of the debtor's asset purchase agreement (citing *Jamaica Shipping Co. Ltd. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.)*, 458 F.3d 92 (2d Cir. 2006) and *Tenet Healthsystems Philadelphia, Inc. v. Nat'l Union of Hosp. & Health Care Emps. (In re Allegheny Health, Educ. & Research Found.)*, 383 F.3d 169 (3d Cir. 2004))).

Although all these factors support a finding of arising-in jurisdiction, Plaintiff's claims arise in Debtor's bankruptcy case for a more basic reason. The bulk of Plaintiff's claims, like the claims in *Lowenbraun*, complain of bad acts taken *in a bankruptcy proceeding*. Further, the very injury of which Plaintiff complains is the judgment concluding that proceeding. Plaintiff's conversion count asserts that ICG and Lexington Coal converted his property by filing a proposed agreed judgment in the CTB adversary proceeding–an action filed in Debtor's case. Plaintiff's breach of fiduciary duty and negligence counts fault the Defendants for failing, in the adversary proceeding, to conduct an adequate search for, and give notice to, Emmit Begley's

heirs. Plaintiff's misrepresentation count faults Defendants for representing to this Court that they could not identify "E. Begley." Plaintiff's unjust enrichment count alleges that ICG and Lexington Coal were unjustly enriched by the agreed judgment at Plaintiff's expense. All of Plaintiff's tort and quasi-contract theories fault Defendants for bad acts in the CTB adversary proceeding, which resulted in the entry of a judgment, that deprived Plaintiff's predecessors-in-interest of title to the funds in the CTB account and caused Plaintiff to suffer damages in the amount of those funds.

This Court has previously held that similar allegations arose in bankruptcy. In *In re Alma Energy*, this Court entered a consent judgment on a trustee's state-law conspiracy claim that alleged parties conspired to strip a converted Chapter 11 debtor of assets by making false representations to the Court in support of a proposed mining agreement, which this Court ultimately approved to the debtor's alleged detriment. *See Spradlin v. Williams (In re Alma Energy)*, 521 B.R. 1, 29-30 (Bankr. E.D. Ky. 2014) (Lee, J.), *aff'd*, No. 14-173-ART, slip op. (E.D. Ky. May 28, 2015). On review of a 60(b) motion to set aside that consent judgment for lack of jurisdiction, this Court held that the conspiracy count satisfied arising-in jurisdiction because the conspiracy "included among its ends the entry of a bankruptcy court order." *Id.* at 30. Here too, allegations of tortious conduct in a bankruptcy proceeding, which resulted in the entry of a bankruptcy court order that is the source of Plaintiff's damages, could not "exist outside of . . . bankruptcy." *Sanders*, 973 F.2d at 482.

Plaintiff relies heavily on *Johnson v. Fifth Third Bank*, 476 B.R. 493 (W.D. Ky. 2012), in support of his argument that his claims are merely related to Debtor's bankruptcy. Plaintiff's reliance is without merit. In *Johnson*, a chapter 11 debtor's cattle vendors sued the debtor's bank for freezing the debtor's accounts prepetition, which resulted in non-payment of the debtor's

12

cattle bill. Although the court held that it had related-to jurisdiction (the vendors' claims against the bank had the potential to reduce their claims against the debtor's estate), *see id.* at 500-01, it granted the vendors' motion for mandatory abstention because their claims were based on a prepetition asset freeze and therefore "could exist regardless of the presence of a bankruptcy action." *Id.* at 504.

Plaintiff argues that his claims are like the claims in *Johnson*, though he correctly acknowledges that they are distinguishable from the *Johnson* claims in their "timing." [ECF No. 17 at 6.] More than timing, however, distinguishes this case from *Johnson*. Plaintiff's claims discussed above are not only postpetition claims; they are claims which complain of bad acts taken in a bankruptcy case, resulting in an injurious bankruptcy court judgment. None of this was the case in *Johnson*.

Plaintiff also argues that the well-pleaded complaint rule applies to arising-in jurisdiction, and that his claims therefore do not arise in because he did not plead claims under bankruptcy law. This is incorrect. The well-pleaded complaint rule, the Supreme Court has explained, "applies only to statutory 'arising under' cases"–i.e., cases brought under those grants of federal jurisdiction that confer jurisdiction over claims arising under federal law or some subset of federal law. *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 258 (1992). Thus, while the well-pleaded complaint rule may apply to § 1334(b)'s grant of arising-under jurisdiction, it has no application to arising-in jurisdiction. *See McIntyre Land Co. v. McIntyre Bldg. Co. Inc. (In re McIntyre Bldg. Co. Inc)*, No. 10-30558-WRS, 2011 WL 1434691, at *10-12 (Bankr. M.D. Ala. Apr. 14, 2011) (relying on *Red Cross* in concluding that the well-pleaded complaint rule does not apply to arising-in jurisdiction); *Foster Poultry Farms, Inc. v. IBM Corp.*, Civ-F-06-0680, 2006 WL 2769944, at *4-8 (E.D. Cal. Aug. 1, 2006) (same).

Plaintiff's breach of contract claim and accounting claim, unlike his other claims, do not fault Defendants for their acts in the CTB adversary proceeding. The breach of contract claim faults the Debtor for prepetition breaches of contract, liability for which Plaintiff asserts ICG and Lexington Coal have assumed, while the accounting claim simply seeks to quiet title to the CTB account funds.

It is not, strictly speaking, necessary to decide whether these claims are core. Having determined that five of Plaintiff's seven claims are core, the Court is not required to determine whether the remaining claims are core in deciding Plaintiff's motion for mandatory abstention. *See Milford Grp.*, 164 B.R. at 897. Abstaining in the two remaining counts, which are inextricably intertwined with and seek the same relief as the other five, would be wholly impracticable.

However, were the Court to reach this question, it would likely decide that the remaining counts are core, for many of the reasons stated above. Plaintiff's breach of contract claim depends on an interpretation of–or collateral attack on–the assumed-liability provisions of Debtor's asset purchase agreements, as well as those agreements' injunction against actions seeking successor liability. On similar facts, the District Court has held a claim arose in a debtor's bankruptcy. *See Quesenberry*, 2012 WL 3109431, at *4. Plaintiff's accounting action collaterally attacks the agreed judgment in the CTB adversary proceeding, while seeking to reinterpret Debtor's asset purchase agreements' provisions for its cash assets. Here too, the District Court has held similar claims satisfy arising-in jurisdiction. *See Spradlin*, 2012 WL 6706188, at *11; *Gentry*, 207 B.R. at 150 (both holding that claims which grow out of a debtor's postpetition contracts satisfy arising-in jurisdiction).

Finally, the parties focus much of their briefing on whether Plaintiff's claims arise under title 11. The Court need not address Plaintiff's forceful submission that state-law claims cannot arise under title 11, because it holds that Plaintiff's claims arise in the Debtor's case.

### Order

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's Renewed Motion to Remand to Leslie Circuit Court [ECF No. 9] is DENIED.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Wednesday, September 09, 2015
(tnw)