**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION**

| | |
|---|---|
| IN RE | |
| HNRC DISSOLUTION CO. | CASE NO. 02-14261 |
| DEBTOR | |
| TERRY GIESE | PLAINTIFF |
| V. | ADV. NO. 15-1005 |
| COMMUNITY TRUST BANK, *et al.* | DEFENDANTS |

**MEMORANDUM OPINION**

This removed action is related to prior adjudications that discuss the fourteen year history of the underlying bankruptcy case. First, the United States District Court determined it had bankruptcy jurisdiction over this matter and denied the Plaintiff's Motion to Remand, *Giese v. Cmty. Tr. Bank, Inc.*, No. 14-126-GFVT, 2015 WL 1481618, at *1 (E.D. Ky. Mar. 31, 2015). Second, this Court determined this is a core proceeding and thus denied the Plaintiff's Motion for Mandatory Abstention. [ECF No. 18.] Now, the Court delves deeper into the record and concludes the Plaintiff's claims must be dismissed on principles of *res judicata* and failure to state a claim upon which relief can be granted. The Court will grant Defendants Community Trust Bank's and Lexington Coal Company's Motion to Dismiss [ECF No. 25].[1]

---

[1] Defendant International Coal Group, Inc. filed a bankruptcy petition on January 11, 2016 [see ECF No. 39], and this matter is stayed as to it. 11 U.S.C. § 362(a)(1).

## Background and Procedural History[2]

**A. The Horizon Bankruptcy**

In November 2002, Leslie Resources, Inc. ("LRI"), along with 160 affiliates (collectively, the "Horizon Debtors"), filed voluntary chapter 11 bankruptcy petitions. The cases were jointly administered under the lead case styled *In re Horizon Natural Resources Company*, Case No. 02-14261 (the "Horizon Bankruptcy"). The Joint Administration Motion noted that collectively, the Horizon Debtors were one of the largest coal producers in the United States. [HNRC ECF No. 3 at 12.] Relevant to the issues raised herein, LRI listed $316,358.00 in "restricted cash" in its personal property schedule. [LRI ECF No. 7 at 20.] LRI did not indicate the bank in which funds were deposited, nor the nature of the restriction.

In April 2004, the Horizon Debtors filed two plans—one debtor group, which included LRI, filed a Joint Plan of Reorganization and the remaining debtors filed a Joint Liquidating Plan (the "Initial Plans"). The Initial Plans contemplated an open auction sale of substantially all of the Horizon Debtors' assets based on an Asset Purchase Agreement proposed by the Horizon Debtors. In connection with the Initial Plans, the Horizon Debtors sought approval of certain bidding procedures, including the Horizon Debtors' rights to select a stalking horse bidder. [*See* HNRC ECF No. 2883.]

On May 13, 2004, the Horizon Debtors filed their First Amended Joint Plan of Reorganization and First Amended Joint Liquidating Plan which contemplated a sale of substantially all of the Debtors' assets pursuant to an Asset Purchase Agreement between the Horizon Debtors, including LRI, and proposed purchaser, Newcoal, LLC (now known as

---

[2] References to the docket in *In re Horizon Natural Resources Company*, Case No. 02-14261, appear as "HNRC ECF No. __." References to the docket in *In re Leslie Resources, Inc.*, Case No. 02-14314, appear as "LRI ECF No. __." References to the docket in *Community Trust Bank, Inc. v. Berman, et al.*, Adv. Case No. 06-1022, appear as "CTB AP ECF No. __." References to the docket in this adversary proceeding appear as "ECF No. ___."

2

International Coal Group, Inc.)[3] [HNRC ECF No. 3018], subject generally to overbids. In connection therewith, the Horizon Debtors filed an Amended Motion for Order (A) Approving (i) Auction Procedures, (ii) a Breakup Fee, and (iii) Form and Manner of Notice, and (B) Setting Sale Hearing Date [HNRC ECF No. 3016] (the "Procedures Motion"). In addition to seeking approval of auction procedures, the Procedures Motion sought approval of a Sale Notice.

The Sale Notice described the auction procedures, including requirements for bids, bidder participation, bid procedure deadlines, and court approval requirements. The Horizon Debtors sought to serve the Sale Notice on, among others, creditors, parties-in-interest, counterparties to contracts and leases and potential buyers. In addition, the Horizon Debtors asked to publish the Sale Notice in business and industry publications that they determined would promote the marketing and sale of the assets. The Procedures Motion was granted by order entered on June 16, 2004. [HNRC ECF No. 3337.] The order directed that "[t]he Debtors shall publish the Sale Notice in the Wall Street Journal and in such other financial and industry publications as the Debtors and their investment bankers determine will promote the marketing and sale of the Purchased Assets." [*Id*. at 5.] The order further set a deadline for filing any objections to the proposed sale. [*Id*. at 13.]

The Horizon Debtors amended their plans and disclosure statements two additional times. On July 11, 2004, they filed their Third Amended Joint Plans, the Reorganization Plan [ECF No. 3526], the Liquidation Plan [HNRC ECF No. 3527] and related amended disclosure statements. By order entered July 13, 2004, the Court approved the Horizon Debtors' Disclosure Statements and set August 31, 2004, as the date for the hearing on confirmation of the plans. [HNRC ECF No. 3549.] That order also established voting deadlines and objection procedures for the pending plans (collectively the "Confirmation Procedures"). In conformity therewith, on

---

[3] *See infra* note 4.

August 27, 2004, the Horizon Debtors filed a "Notice of Filings of Affidavits of Publication of the Confirmation Hearing Notice and the Auction Notice" which set forth that the Confirmation Procedures had been published in the following:

1. *Huntington Herald-Dispatch*;
2. *Wall Street Journal*;
3. *Lexington Herald-Leader*;
4. *Ashland Daily Independent*; and
5. *Appalachian News-Express*.

That Notice also provided that the Sale Notice had been published in the following:

6. *Wall Street Journal*;
7. *Williamson Daily News*;
8. *Charleston Newspapers - Saturday Gazette Mail*;
9. *Ashland Daily Independent*; and
10. *Huntington Herald-Dispatch*.

[HNRC ECF No. 3948.]

The auction was held on August 17, 2004, and two transactions emerged, one with International Coal Group, Inc. ("ICG") and one with Lexington Coal Company, LLC ("Lexington Coal").[4] ICG offered to purchase substantially all of LRI's assets, with the remainder to be sold to Lexington Coal. The Lexington Coal Asset Purchase Agreement identified LRI as a "Partial Seller." [HNRC ECF No. 3958 at 25.]

While the two purchasers each bought different assets, both agreements contained similar language regarding the sale of Debtor's cash. *See* HNRC ECF No. 3172 ¶ 2.1(a)(xii) (providing, absent certain exclusions, for the sale of "all cash and cash equivalents of the [Debtor]" to ICG); HNRC ECF No. 3915 ¶ 2.1(a)(xii) (providing, absent certain exclusions, for the sale of "all cash and cash equivalents of the [Debtor]" to Lexington Coal). Neither agreement provided a schedule listing the cash assets. As relevant here, ICG also purchased a leasehold interest from

---

[4] At the time these assets were purchased through the Bankruptcy Case, ICG was known as "Newcoal, LLC" and Lexington Coal was known as "Oldcoal, LLC." Thus, references to "Newcoal" in the Order of Sale or related pleadings refer to ICG, and references to "Oldcoal" in the Order of Sale or related pleadings refer to Lexington Coal.

LRI in Leslie County, Kentucky, listed on the schedules of ICG's asset purchase agreement as "Emmit Begley Heirs Escrow" [HNRC ECF No. 3172-4 at 23], and LRI's rights in a lease agreement, also listed on the schedules of ICG's asset purchase agreement as "Emmit Begley Heirs Escrow" [HNRC ECF No. 3172-5 at 23]. Neither asset was listed in the schedules to Lexington Coal's asset purchase agreement.

In September 2004, this Court entered orders approving the sales and confirming the Horizon Debtors' Plans of Reorganization and Liquidation. Specifically, on September 16, 2004, the Court entered:

1. An "Order (A) Approving Asset Purchase Agreements, (B) Authorizing Sale of Substantially all Assets Free and Clear of All Liens, Claims, Interests and Other Encumbrances, and (C) Authorizing Assignment of Certain Agreements" [HNRC ECF No. 4085] (the "Sale Order") approving the Amended and Restated Asset Purchase Agreement dated June 2, 2004 between Debtor and ICG, and the Asset Purchase Agreement dated August 17, 2004 between Debtor and Lexington Coal;

2. Findings of Fact, Conclusions of Law and Order Confirming the Debtors' Third Amended Joint Plan of Reorganization [HNRC ECF No. 4088]; and

3. Findings of Fact, Conclusions of Law and Order Confirming the Debtors' Third Amended Joint Liquidating Plan [HNRC ECF No. 4089.]

As applicable here, the Sale Order provided:

1. Proper and adequate notice of the Sale Motion had been given and that no other notice or further notice is required. [HNRC ECF No. 4085 at 3.]

2. "Each purchaser is a good faith purchaser under § 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in consummating the transactions contemplated by the applicable Agreement." [*Id.* at 5.]

3. The order "vest[ed] in [each] Purchaser all right, title and interest in the applicable Purchased Assets . . . free and clear of any Encumbrances." [*Id.* at 6-7.]

4. With respect to assumed liabilities, "none of the Purchasers shall have any liability for any (i) obligation of the Debtors, or (ii) any Claim against the Debtors related to

the applicable Purchased Assets," except as expressly provided in the sale agreements.[5] [*Id.* at 7.]

5. "All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets . . ." [*Id.* at 12.]

6. "[T]he transfer of title to the Purchased Assets and the Assumed Agreements shall be free and clear of any and all Encumbrances, . . ." [*Id.* at 12-13.]

7. "This Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, any Debtor (whether known or unknown), . . ." [*Id.* at 13] and further enjoined all persons from filing actions against the Purchasers "with respect to any (a) Encumbrance . . . [on] the applicable Purchased Assets, . . . or (b) Successor Liability." [*Id.* at 14.]

8. "All entities that are in possession of some or all of the Purchased Assets on the relevant Closing Date are directed to surrender possession of such Purchased Assets to the relevant Purchaser or its assignee at the applicable Closing." [*Id.* at 16.]

The Confirmation Orders contained similar findings:

1. "[N]otice of the Confirmation Hearing and the opportunity for any party in interest to object to the confirmation of the Plan was adequate and appropriate; . . ." [HNRC ECF. Nos. 4088 at 2, 4089 at 2.]

2. The Plan constituted a motion for sale of assets free and clear of all liens, claims, encumbrances and other interests. [HNRC ECF Nos. 4088 at 10, 4089 at 10.]

3. "Immediately upon the entry of this Confirmation Order, and subject to the provisions thereof, the terms of the Plan shall be binding upon the Debtors, the Liquidating Trust, the Liquidating Trustee, any entity issuing securities under the Plan, any entity acquiring property under the Plan, any and all holders of Claims and Equity Interests (irrespective of whether such Claims and Equity Interests are impaired under the Plan or whether the holders of such Claims or Equity Interests accepted or are deemed to have accepted the Plan), the non-Debtor parties to executory contracts and unexpired leases assumed, assumed and assigned or rejected under the Plan, and the heirs, executors, administrators, successors or assigns, if any, of any of the foregoing." [HNRC ECF Nos. 4088 at 49-50, 4089-1 at 52-53.]

4. "**Notwithstanding any other applicable law to the contrary, except as otherwise expressly provided in the Plan, or herein, each and every entity (as defined in the Bankruptcy Code), including all entities (along with their respective present or**

---

[5] The sale agreements, as relevant here, provided that the purchasers assumed liabilities "arising from or related to the Buyer's [purchase] after the Closing Date," but not "any Liabilities arising out of a breach by the Sellers of any Executory Contract." [HNRC ECF No. 3172 ¶ 2.3(a)(i); HNRC ECF No. 3915 ¶ 2.3(a)(i).]

6

> **former employees, agents, officers, directors, or principals) who have held, hold or may hold Claims, debts or Causes of Action, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, against or Equity Interests or other interests in any or all of the Debtors, and all entities who have held, hold or may hold Claims, debts or Causes of Action against, interests in or Liens on, property of any and all Debtors, in each case, are permanently enjoined, on or after the Confirmation Date, from taking those actions enjoined pursuant to Section 11.3 of the Plan**." [HNRC ECF Nos. 4088-1 at 57, 4089-1 at 60 (emphasis in original).]

5. "Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court will retain such jurisdiction over the Chapter 11 Cases as is legally permissible, including jurisdiction: . . . (k) to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation, implementation or enforcement of the Plan, any Plan Agreements and Documents, the Confirmation Order, or any other order of the Bankruptcy Court." [HNRC ECF Nos. 4088-1 at 58-60, 4089-1 at 61-63.]

### B. The Interpleader Action

In June 2006, two years after the sale of the Horizon Debtors' assets, Community Trust Bank ("CTB") filed an interpleader action in this Court [Adv. Case No. 06-1022] (the "Interpleader Action") to determine the rightful owner of funds held in an account maintained at CTB ($334,054.11) (the "CTB Account"). The Complaint, as amended, listed defendants (i) LRI Dissolution Co., f/k/a/ Leslie Resources Inc., (ii) the Liquidating Trustee of the HNRC Liquidating Trust, Geoffrey L. Berman, (iii) Lexington Coal and ICG, the successful bidders for the Horizon Debtors' assets, (iv) A.T. Massey Coal Company ("Massey"), a purchaser of some of Debtor's affiliates, and (v) "E. Begley," "an unknown claimant referred to on the Business Account Agreements." [CTB AP ECF No. 4 at 2.]

Noting there were competing claims to the CTB Account, CTB represented it was unable to identify the rightful owner. CTB maintained that after diligent search and inquiry, it was unable to determine E. Begley's whereabouts or full name and sought leave to serve E. Begley

by publication.  This Court granted CTB's request and CTB served E. Begley by publication in a form and manner approved by the Court.  Default judgments were subsequently entered against all Defendants except ICG and Lexington Coal, thereby extinguishing any interest they may have had in the CTB Account.  CTB moved to pay the CTB Account funds into Court and to be dismissed from the action.  The motion was granted, leaving only ICG and Lexington Coal as parties.  In December 2006, ICG and Lexington Coal tendered an agreed order dismissing the adversary proceeding and dividing the account funds (ICG–67 %, Lexington Coal–33%).  This Court entered that order and disbursed the subject CTB Account funds in accord with its terms.

### C. Plaintiff's Subsequent State Court Action

More than seven years later, Plaintiff filed this (now removed) action in the Leslie County Circuit Court against CTB, ICG, and Lexington Coal claiming title to the CTB Account funds and seeking damages against those entities on various state-law tort and contract theories. The Complaint generally alleges the following:

1. In 1936, Emmit Begley, owner of a tract of land in Leslie County, Kentucky (the "Property"), died.  During the 1990s, LRI entered into mineral leases with the owners of the Property (the "LRI leases") with some of the Begley heirs ("the leasing heirs"), but failed to contract with the other part-owners of the Property, Bertha and Arnold Begley ("the non-leasing heirs").

2. The LRI leases stated that the leasing heirs were the tract's sole owners.  Plaintiff acquired an interest in the Property from some of Mr. Begley's heirs.

3. In 1997, LRI opened the CTB Account as an escrow account to hold mineral royalties in escrow for the owners of the property.  In 2000, LRI made disbursements from the account to the leasing heirs, but not to the non-leasing heirs.

4. The remaining funds in the account belonged to the non-leasing heirs who did not receive notice of (i) the LRI leases, (ii) LRI's bankruptcy, (iii) Lexington Coal and ICG's purchases of LRI's assets, or (iv) CTB's Interpleader Action.

5. In 2009, Plaintiff purchased the non-leasing heirs' interest in the Leslie County tract, vesting him, in his view, with title to the funds formerly held in the CTB account.

8

Plaintiff seeks judgment, under seven state-law theories, in the amount of the CTB Account funds paid into this Court in 2006 in the Interpleader Action. His Complaint only briefly touches on the Horizon Debtors' asset sales, as the Defendants' conduct in the Interpleader Action is the central focus of most of his claims. Specifically, Count 1, "Collection of Royalties," simply asserts that Plaintiff has title to the CTB Account funds, that any rights of ICG and Lexington Coal are subject to his superior rights, and that Plaintiff is therefore entitled to judgment for the amount of the CTB Account funds paid into Court. Count 6 alleges that LRI breached a contract with the non-leasing heirs, or that the non-leasing heirs were third-party beneficiaries of LRI's contracts with the leasing heirs, and that ICG and Lexington Coal are liable for LRI's breaches. Counts 2 through 5 seek damages in the amount of the CTB Account funds for tortious acts that some or all the Defendants allegedly committed in the Interpleader Action:

1. Count 2 alleges that ICG and Lexington Coal unlawfully converted the account funds "when they agreed to divide the proceeds of the Escrow Account," i.e., when they tendered a proposed agreed judgment in the CTB Interpleader Action. [ECF No. 1-2 ¶ 48.]

2. Count 3 alleges that ICG and Lexington Coal owed a fiduciary duty to the non-leasing heirs, which they breached by failing to give them notice of the CTB Interpleader Action, failing to conduct a diligent search for the Begley heirs, and converting the account funds.

3. Count 4 alleges that all Defendants, including CTB, were negligent in failing to conduct a diligent search for the Begley heirs in the CTB Interpleader Action, representing to this Court that they had conducted a diligent search, and only serving publication notice on the long-deceased Emmit Begley.

4. Count 5 alleges that Defendants made fraudulent and negligent misrepresentations to this Court that they could not determine E. Begley's identity after a diligent search, and that Defendants intended that "the bankruptcy court[ ] would rely upon such misrepresentations and omissions." [*Id.* ¶ 65.]

9

5. Count 7 claims that ICG and Lexington Coal have been unjustly enriched at the Plaintiff's expense by obtaining the CTB Account funds in the CTB Interpleader Action.

### D. Removal of the State Court Action to Federal Court

The Defendants timely removed the Leslie Circuit Court action to the United States District Court for the Eastern District of Kentucky under the bankruptcy removal statute, 28 U.S.C. § 1452. Defendants asserted that Plaintiff's suit was related to Debtor's bankruptcy case and therefore was within the District Court's bankruptcy jurisdiction. Plaintiff moved the District Court to remand, or in the alternative, to abstain under § 1334's mandatory abstention provision, which requires abstention in certain related-to non-core matters. 28 U.S.C. § 1334(c)(2). Defendants opposed Plaintiff's motion.

The District Court denied Plaintiff's motion to remand, finding that for purposes of deciding the motion to remand, it was only necessary to decide whether Plaintiff's claims were related to the bankruptcy and were therefore within § 1334(b) jurisdiction. The District Court held that the claims could "conceivably . . . impact the handling and administration of the bankrupt estate" and were therefore related to Debtor's case and within the District Court's bankruptcy jurisdiction. *Geise v. Cmty. Tr. Bank*, 2015 WL 1481618, at *6 (citations omitted) (internal quotation marks omitted). While acknowledging Defendants' substantial arguments that Plaintiff's claims were core, the District Court referred the proceeding to this Court, stating: "Having determined that this [District] Court does have subject matter jurisdiction, the Court will refer this case to the bankruptcy court who is better equipped to confront the pending arguments on abstention and to address all further issues as consistent with the referral power in 28 U.S.C. § 157." *Id*. at *7.

Thereafter, Plaintiff renewed his request for mandatory abstention, and that request was denied, based on this Court's conclusion that this matter is a core proceeding. [ECF No. 18.] Currently pending before the Court are Defendants' Motion to Dismiss for Failure to State a Claim [ECF No. 25] and the Defendants' Motion for Protective Order to Stay Discovery and Extend Pretrial Deadlines [ECF No. 26.] ICG subsequently filed a bankruptcy petition on January 11, 2016, and this matter is stayed as to it. 11 U.S.C. § 362(a)(1). As to the remaining defendants, the matter is ripe for decision.

## Jurisdiction

This Court has jurisdiction herein, as found by the District Court, pursuant to 28 U.S.C. 1334(b). This is a core proceeding [*see* ECF No 18]. Venue is proper pursuant to 28 U.S.C. § 1409.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) is made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b).[6] Rule 8(a)(2), made applicable in adversary proceedings pursuant to Bankruptcy Rule 7008(a), requires "a short and plain statement of the claim showing that the pleader is entitled to relief." In analyzing the pleading requirement of Rule 8(a)(2) in connection with a Rule 12(b)(6) motion to dismiss, the Supreme Court has stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "If it appears beyond doubt that the plaintiff's complaint does not state facts 'sufficient to state a claim that is plausible

---

[6] References to the Federal Rules of Civil Procedure will appear as "Rule ___," and reference to the Federal Rules of Bankruptcy Procedure will appear as "Bankruptcy Rule ____."

11

y
z

on its face,' then the claims must be dismissed." *Preferred Auto Sales, Inc. v. DCFS USA, LLC,* 625 F. Supp. 2d 459, 463 (E.D. Ky. 2009) (citations omitted).

Although answers have been filed, the standard of review is the same for a motion for judgment on the pleadings under Rule 12(c) as a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place, LLC,* 539 F.3d 545, 549 (6th Cir. 2008). "[A]ny distinction between them is merely semantic because the same standard applies to motions made under either subsection." 2 James Wm. Moore *et al.,* MOORE'S FEDERAL PRACTICE § 12.38 (3d ed. 2015). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JP Morgan Chase Bank, N.A., v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

## Analysis

Defendants argue (1) the Horizon Debtors' bankruptcy sale was an *in rem* proceeding that transferred property rights good against the world; (2) Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel; and (3) Plaintiff does not have standing because he cannot show that he has an individualized right in the deposit account, and it is undisputable that the CTB Account was an asset of the bankruptcy estate. Plaintiff's opposition is discussed below.

### A. The Bankruptcy Sale was an *In Rem* Proceeding

The Plaintiff does not dispute that a bankruptcy sale is an *in rem* proceeding. "A proceeding under section 363 is an *in rem* proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with

z

12

notice of the proceeding." *Gekas v. Pipin* (*In re Met-L-Wood Corp.*), 861 F.2d 1012, 1017 (7th Cir. 1988); *see also Regions Bank v. J.R. Oil Co., LLC,* 387 F.3d 721, 731 (8th Cir. 2004) (bankruptcy sales confer rights good against the world).[7] The Sale Order entered in the Horizon Bankruptcy is good against the world, including Plaintiff, and Plaintiff may not collaterally attack this Court's final Sale Order. Any argument that the CTB Account funds were not property of the Horizon Debtors should have been made as part of the sale/confirmation process because the world was on notice that substantially all the Horizon Debtors' assets were to be sold.

Plaintiff attempts to escape this conclusion by arguing that the CTB Account funds were not property of the estate and could not be transferred by the Horizon Bankruptcy sale/confirmation process; however, the record is clear the CTB Account funds were sold. As reviewed above, absent certain inapplicable exclusions, the sales were sales of all of LRI's assets. "All cash and cash equivalents" clearly includes "restricted cash" and coal lease royalties. Plaintiff cannot now collaterally attack the Sale Order with a claim that LRI did not have the authority to sell the CTB Account funds.

### B. *Res Judicata* Bars Plaintiff's Claims

*Res judicata* "is the doctrine 'by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or cause of action or raising a new defense to defeat a prior judgment.'" *Bey v. Birkett*, No. 11-cv-13625, 2012 WL 4355530, at *4 (E.D. Mich. July 30, 2012) (quoting *Stern v. Mascio*, 262 F.3d 600, 608 (6th Cir. 2001)). *Res judicata* can be raised by a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Platsis v. E.F. Hutton & Co., Inc.,* 946 F.2d 38, 42 (6th Cir. 1991). "[W]hen

---

[7] Confirmed bankruptcy sales may only be set aside under Rule 60(b), applicable in bankruptcy via Bankruptcy Rule 9024. *Gekas*, 861 F.2d at 1018. No Rule 60(b) motion was filed in the Horizon Bankruptcy.

13

entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issues of fact." *Pettingill Enters., Inc. v. Blackstone Equip. Fin., L.P.* (*In re Pettingill Enters., Inc.*), Ch. 11 Case No. 11-12-10515, Adv. No. 12-1217, 2012 WL 5387700, at *1 (Bankr. D.N.M. Nov. 2, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)).

"A claim is barred by the *res judicata* effect of prior litigation if all of the following elements are present: '(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'" *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).  Each element is addressed in turn.

### 1. Final Decision on the Merits by a Court of Competent Jurisdiction

Plaintiff argues that the first element of *res judicata* is not met because there was no merits adjudication of the Begley Heirs' claims.  Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings and *res judicata* principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings. *Browning*, 283 F.3d at 772.  Similarly, a bankruptcy court's sale order is a final order for *res judicata* purposes. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008).  "A sale order signals an end to litigation in a bankruptcy proceeding; with the execution of the sale order the debtor's assets are judicially sold and no further litigation can be brought regarding those assets without forcing the court to undo the sale, an action of the very kind *res judicata* seeks to prohibit." *Id*. at 579.  As explained below, the Plaintiff's predecessor's claims could have been

raised in the Horizon Bankruptcy sale/confirmation process and the element of a final adjudication on the merits of the Begley Heirs' claims is met.

### 2. A Subsequent Action between the Same Parties or their Privies

Plaintiff argues that *res judicata* is not met because the Begley Heirs, admittedly Plaintiff's predecessor-in-interest, were not given notice of the bankruptcy or adversary proceeding. "*Res judicata* bars not only the actual parties to an earlier bankruptcy proceeding from later bringing suits which should have been brought in the context of the proceeding, but also those in privity with the parties. Privity in this sense means a successor in interest to the party." *Browning*, 283 F.3d at 772 (citations omitted) (internal quotation marks omitted). The notice issue is addressed below; however, there is no dispute that Plaintiff is in privity with the Begley Heirs.

### 3. An Issue in the Subsequent Action which was Litigated or which could have been Litigated in the Prior Action

Plaintiff argues that the third element of *res judicata* is not met because the Begley Heirs did not have an opportunity to be heard. However, the Begley Heirs clearly could have and should have brought their claims to the "restricted cash" in the Horizon Bankruptcy proceeding.

Each of the factual allegations of the State Court Complaint occurred prior to the Horizon Bankruptcy. The Complaint alleges: (i) the Begley Heirs held an interest in real property which was subsequently (in the 1990s) leased to LRI in the form of mineral leases; (ii) in 1997, LRI opened the CTB Account to hold mineral royalties in escrow for the Begley Heirs; and (iii) the Begley Heirs did not receive notice of the mineral leases, the Horizon Bankruptcy, the Horizon Debtors' asset sales or the subsequent Interpleader Action. Based on these allegations, Plaintiff avers in Count 1 that he holds title to the CTB Account funds and seeks recovery from ICG and Lexington Coal. Similarly, based on a factual allegation that disbursements were never made to

15

Bertha Begley and Arnold Begley, or their heirs, Count 6 alleges breach of contract of the lease with LRI, and seeks damages from ICG and Lexington Coal. The remaining "factual allegations" address the procedural actions taken by the parties in the subsequent Interpleader Action, which determined the allocation of the CTB Account funds between ICG and Lexington Coal.

As previously determined, there is no question the CTB Account funds were sold and transferred as part of the Horizon Bankruptcy sale/confirmation process. Any claim that the Horizon Debtors did not own the CTB Account funds and/or did not have the right to sell or transfer them, could (and should) have been made in the context of the bankruptcy sale procedures. The world was on notice that substantially all the Horizon Debtors' assets were to be sold, including coal leases and cash. The Begley Heirs, parties to the LRI coal leases, had notice of the sales and confirmation process by publications in Kentucky, West Virginia and the Wall Street Journal. The proposed sales and confirmation process were advertised nationally and locally under procedures designed to give notice to all potential persons with an interest in any of the Debtors' assets. Whether the account was an escrow account or a deposit account is of no import because there was adequate notice that all of the assets in which the Horizon Debtors' had an interest, including coal leases, cash and cash equivalents, were being sold. Notice reasonably calculated under the circumstances, to apprise interested parties of the pendency of an action and an opportunity to object is a requirement of due process. *Mullane v. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Notice was reasonably calculated under the circumstances to apprise interested parties of the sales/confirmation process and an opportunity to object. Due process has been satisfied. Any claim to the restricted cash should have been litigated in the bankruptcy sale/confirmation process. The exception to *res judicata* based on a party not having a full and

16

fair opportunity to litigate the claim in not applicable here.  *See generally Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1144 (6th Cir. 1985 (quoting *Allen v. McCurry*, 449 U.S. 90, 95 (1980)) (An exception to the application of *res judicata* exists "where the party against whom an earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.")

"Confirmation has preclusive effect, foreclosing relitigation of 'any issue actually litigated by the parties and any issue necessarily determined by the confirmation order.'" *Bullard v. Blue Hills Bank,* --- U.S. ---, 135 S. Ct. 1686, 1692 (2015) (citations omitted).  The provisions of the confirmation orders adjudicate the notice issue, bar claims to the assets sold and enjoin actions against the purchasers.

### 4.  An Identity of the Causes of Action

Plaintiff argues there is no identity of the causes of action because this case involves additional claims against the Defendants for negligence and misrepresentation after the sale of the Horizon Debtors' assets and confirmation of the plans.  "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'"  *Sanders Confectionary Prods., Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 484 (6th Cir. 1992) (quoting *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)).  A different legal theory, based on the same set of facts as in the prior action will not save the claim from *res judicata*.  *Spradlin v. Bruner (In re Bruner),* Case No. 13-51267, Adv. No. 15-5119 2016 WL 868889, at *3 (Bankr. E.D. Ky. Mar. 7, 2016).  As explained in more detail below, the same facts and evidence necessary to sustain his claim of entitlement to the CTB Account funds (Counts 1 and 6) are necessary to sustain his negligence and misrepresentation claims.

17

The sale of the CTB Account funds was an *in rem* sale, binding on Plaintiff's predecessors-in-interest. The Sale Order and Confirmation Order bars Plaintiff's claims to the CTB Account funds on principles of *res judicata;* thus Counts 1 and 6 will be dismissed.

**C. Counts Two through Five and Count Seven Seek Damages Based on Plaintiff's Entitlement to the CTB Account Funds, and thus, Fail to State a Claim upon which Relief can be Granted.**

Plaintiff's remaining claims, set forth in Counts Two through Five and Count Seven, are each predicated on a finding that Plaintiff has viable claims in the CTB Account funds. Each Count seeks a judgment in the amount of the CTB Account funds disbursed in the CTB Interpleader Action ($328,016.21). Because Plaintiff's claim to the CTB Account is barred as set forth above, his remaining claims likewise fail as a matter of law.

**1. Count Two (Conversion)**

Count Two asserts that ICG and Lexington Coal unlawfully converted the CTB Account funds "when they agreed to divide the proceeds of the Escrow Account." A required element for a conversion claim is that the Plaintiff had legal title to the converted property. *Tolliver v. Bank of Am. (In re Tolliver)*, 464 B.R. 720, 742 (Bankr. E.D. Ky. 2012). Here, Plaintiff has no claim or legal title to the CTB Account funds; therefore, he has failed to state a conversion claim that is plausible on its face.

**2. Count Three (Breach of Fiduciary Duty)**

Count Three alleges that ICG and Lexington Coal owed a fiduciary duty to the non-leasing heirs, which they breached by failing to give them notice of the CTB Interpleader Action, failing to conduct a diligent search for the Begley heirs, and converting the account funds. A claim for breach of fiduciary duty is stated when: (1) defendant owed plaintiff a fiduciary duty; (2) defendant breached that duty; and (3) plaintiff suffered damages as a result of the breach.

18

*Fastenal Co. v. Crawford,* 609 F. Supp. 2d 650 (E.D. Ky. 2009) (citing *Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 348 n.15 (Ky. Ct. App. 2000). "Under Kentucky law, a fiduciary relationship is 'founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person *to act primarily for another's benefit* in matters connected with such undertaking.'" *Sallee v. Fort Knox Nat'l Bank, N.A. (In re Sallee)*, 286 F.3d 878, 892 (6th Cir. 2002) (alteration in original) (quoting *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991)). The Complaint fails to plead facts giving rise to any duty of Lexington Coal to Plaintiff's predecessors, the non-leasing heirs. The injury asserted, a conversion of the CTB Account funds, is barred as discussed above. Count Three fails to state a claim upon which relief can be granted.

### 3. Count Four (Negligence) and Count Five (Negligent Misrepresentation)

Counts Four and Five assert that all Defendants were negligent in searching for and ensuring that the CTB Account funds were paid to the account owners. To successfully pursue a negligence claim under Kentucky law, a plaintiff must prove the following three elements: (1) a legal duty owed to the plaintiff by the defendant, (2) a breach of that legal duty by the defendant, and (3) an injury proximately caused by the breach." *Heinrich v. Kroger Co*., 2 F. App'x. 413, 416 (6th Cir. 2001). Again, no facts are pled giving rise to any duty on the part of Lexington Coal or CTB to Plaintiff's predecessors and the injury claimed, the failure to disburse the CTB Account funds to the Plaintiff's predecessor, is likewise barred as discussed above. Counts Four and Five fail to state claims upon which relief can be granted.

### 4. Count Seven (Unjust Enrichment)

Finally, Count Seven asserts that ICG and Lexington Coal have been unjustly enriched at the Plaintiff's expense by obtaining the CTB Account funds. Under Kentucky law, unjust

19

enrichment has three elements—a "benefit conferred upon defendant at plaintiff's expense," "a resulting appreciation of benefit by defendant," and "inequitable retention of [the] benefit without payment for its value." *Guerin v. Fulkerson,* 354 S.W.3d 161, 165 (Ky. Ct. App. 2011). Plaintiff has no interest in the CTB Account funds; thus, there can be no plausible claim of unjust enrichment.

Moreover, each of the Counts asserting claims based on conduct in the CTB Interpleader Action are collateral attacks on the final order dividing the CTB Account funds entered in that action. Any issues relating to a lack of due process are properly brought as a Rule 60(b) motion in the first action—not as a collateral attack in a separate proceeding. A judgment is void under Rule 60(b)(4) if the judgment "is premised . . . on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010); *see also* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURES § 2862 (3d ed. 2011). Plaintiff and his predecessors-in-interest failed to timely appeal or otherwise make a request to reconsider this Court's final order disbursing the CTB Account funds entered in the Interpleader Action. Plaintiff's claims are barred.

## CONCLUSION

Plaintiff's claims that his predecessors-in-interest have, or had, an interest in the CTB Account funds, and Plaintiff's additional claims predicated on that alleged entitlement to those funds, are barred as a matter of law. The Complaint against Defendants CTB and Lexington Coal fails to state a claim upon which relief can be granted and their requests for dismissal are granted. The Motion for Protective Order [ECF No. 26] is moot. A judgment in conformity herewith shall be entered.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Friday, April 15, 2016
(tnw)